UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| KAYSE BROWN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:24-cv-1001-GMB |
| NICK SMITH, *et al.*, | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Before the court are two partial motions to dismiss Plaintiff Kayse Brown's claims against Defendants Sheriff Nick Smith, Carl Carpenter, and Justin White. Docs. 6 & 13.  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 22.  The motions are fully briefed (Docs. 7, 14, 17–20) and ripe for decision.  For the following reasons, Carpenter and White's motion (Doc. 6) is due to be denied, while Sheriff Smith's motion (Doc. 13) is due to be granted in part and denied in part.

### I. STANDARD OF REVIEW

Both motions raise questions about the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018) (finding that "immunity issues are construed as challenges to the subject-matter jurisdiction

of a federal court"). Subject matter jurisdiction is the statutorily conferred power of the court to hear a class of cases. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). On the other hand, "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id*.

Smith, Carpenter, and White assert that Brown's complaint, "on its face, lacks an adequate basis for subject matter jurisdiction." Doc. 7 at 2; Doc. 14 at 2. The court therefore is confined to the four corners of Brown's complaint and will not consider the affidavit (Doc. 7-1) Carpenter and White submitted in support of their motion.

## II.  RELEVANT FACTS

In June 2021, the Recovery Resource Center ("RRC") hired Brown as a Certified Recovery Specialist. Doc. 1 at 3. The RRC works with the Walker County Sheriff's Office (Doc. 1 at 5), and inmates within the Walker County Jail "frequently

called Brown's cell phone to report the conditions in the jail." Doc. 1 at 6.  Smith is the "elected Sheriff of Walker County," Carpenter is an "employee of the Walker County Sheriff's Office," and White is the "Jail Administrator of the Walker County Jail." Doc. 1 at 2.

After Walker County Jail inmate Tony Mitchell "died of hypothermia and sepsis caused by neglect and abuse while in the jail" (Doc. 1 at 3), Brown began to advocate for "transparency and better conditions in the Walker County Jail." Doc. 1 at 4.  She formed a group called "Justice for Tony Mitchell," attended vigils and protests for Mitchell, and reposted messages on Facebook, some of which "were critical of the way . . . Sheriff Smith's employees treated Mitchell and other inmates." Doc. 1 at 4.

In March 2024, a little more than a year after Mitchell's death, Carpenter texted RRC Director John Bales. Doc. 1 at 4.  He asked Bales to attend "a meeting with the Sheriff about Brown's employment" and attached some of her Facebook posts to his text message. Doc. 1 at 4.  Bales told Brown about the messages the next day and mentioned "that he was going to have a call with the Sheriff." Doc. 1 at 4.  During the call, "the Sheriff told Bales that he did not like that Brown was advocating for Mitchell." Doc. 1 at 4.  Separately, someone at the Sheriff's Office mentioned the contract between the Walker County Jail and RRC to Bales and told her (1) the Sheriff's Office knows "'how valuable the RRC is,' but that it's 'gotten

3

really hard to separate' it from [her] advocacy regarding Tony Mitchell's death"; (2) "the bridges aren't burned, but they seem to be smoldering"; and (3) the Sheriff's Office would "'appreciate [her] help putting it out' on his side." Doc. 1 at 8.

After Bales told Brown that he "had talked to the Sheriff and or Carpenter and Smith about her employment," he also told her "that she needed to 'be careful.'" Doc. 1 at 5. Brown responded that she thought the Sheriff's Office was "trying to make her lose her job" because of her advocacy for Mitchell, and Bales said that "he 'will validate that thought, because that's the reality of it.'" Doc. 1 at 9.

Sheriff Smith and Brown's husband also spoke on the phone. Doc. 1 at 12. During this call, Sheriff Smith said, "I am getting to the point where, if that's how things are going, I mean, we can call people's bosses or do that kind of thing as well." Doc. 1 at 12. Meanwhile, White "wrote correspondence to Brown's employer," stating that "Brown's advocacy was threatening her employer's relationship with the Walker County Sheriff's office," and urging her employer to "take action against her." Doc. 1 at 5 & 9.

In May 2024, Bales terminated Brown's employment with the RRC because of "a complaint from the 'Partner Community.'" Doc. 1 at 5. Following her termination, Carpenter and White notified all of the female inmates at the Walker County Jail that Brown had been terminated from the RRC. Doc. 1 at 6. Carpenter and White also told the inmates that they "should not trust Brown, because she was

4

not who she said she was." Doc. 1 at 6.  Carpenter, White, and Smith then blocked the inmates from making any more calls to Brown. Doc. 1 at 6.

Brown filed her complaint against Smith in his official and individual capacities, Carpenter in his individual capacity, and White in his individual capacity. Brown's complaint includes the following counts against all defendants: (1) a First Amendment retaliation claim brought under 42 U.S.C. § 1983; (2) a state-law tortious interference claim; (3) a claim for violations of Article I, Section 4 of the Alabama Constitution; and (4) a state-law wantonness claim. Doc 1. at 6–16.  Sheriff Smith moves to dismiss all claims against him in his official capacity, arguing he is entitled to immunity under the Eleventh Amendment. Doc. 13.  Smith, Carpenter, and White move to dismiss the state-law claims against them in their individual capacities, arguing they are entitled to State immunity under the Alabama Constitution.  Docs. 6 & 13.  Only the claims against Sheriff Smith in his official capacity will be dismissed.

### III.  DISCUSSION

The court begins by analyzing the official capacity claims against Sheriff Smith and then addresses the individual capacity claims against all three defendants.

### A.  Official Capacity Claims Against Sheriff Smith

Smith argues that the claims brought against him in his official capacity should be dismissed.  Doc. 14 at 5.  Specifically, he contends that these claims are

5

barred by the Eleventh Amendment to the United States Constitution. Doc. 14 at 5.

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Generally, the Eleventh Amendment bars suits against the state or an agency of the state, including § 1983 claims. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).

Eleventh Amendment immunity has "been extended to state officials, acting in their official capacity, where an agency or individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016), *abrogated on other grounds by Twombly*, 550 U.S. at 544 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Id.* Congress has not waived, and Alabama has not abrogated, the state's Eleventh Amendment immunity. *Id.* at 1234. "Consequently, Alabama state officials are immune from claims brought against them in their official capacities." *Id.* For these reasons, Sheriff Smith is immune from suit in his official capacity for

Brown's § 1983 and state-law[1] claims seeking monetary damages.

Brown seems to argue, however, that Smith was acting as a municipal officer, not as a state official, when he advocated for Brown's termination. *See* Doc. 19 at 11; Doc. 1 at 2.  In other words, Brown suggests that her § 1983 claim against Sheriff Smith is effectively a claim against Walker County and not the State of Alabama. *See* Doc. 19 at 11.

Unlike the State of Alabama, a local government "is liable under § 1983 for its policies that cause constitutional torts"—policies that "may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *McMillian v. Monroe County*, 520 U.S. 781, 784 (1997) (quoting *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  But "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998).  "A local government must have power in an area in order to be held liable for an official's acts in that area." *Id.* (internal quotation marks and citation omitted).  The areas over which a local

---

[1] It is unclear from the complaint whether Brown intended to bring the state-law claims against Sheriff Smith in his official capacity, and Brown did not respond to Smith's arguments for dismissal of the state-law official-capacity claims. *See* Doc. 19.  Therefore, even if the Eleventh Amendment did not immunize Smith from the state-law claims against him in his official capacity, these claims have been abandoned. *See Boyd v. Daniels*, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (same).

government or a county exercises authority is "dependent on an analysis of state law." *McMillian*, 520 U.S. at 786.  In making this determination, the court "must respect state and local law's allocation of policymaking authority, and not assume that final policymaking authority lies in some entity other than that in which state law places it." *Turquitt*, 137 F.3d at 1288 (internal quotation marks and citation omitted).

"In Alabama, counties possess only those powers expressly delegated to them by the legislature." *Ex parte Sumter County*, 953 So. 2d 1235, 1238 (Ala. 2006). The powers delegated to the counties related to county jails are (1) that "[t]he county commission shall erect . . . jails," and (2) that "[e]ach . . . county shall be required to maintain a jail within their county." Ala. Code § 11-14-10; *Sumter County*, 953 So. 2d at 1238; *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996). The counties in Alabama therefore lack authority over "the daily administration or operation of a county jail or for overseeing inmates," the sheriff's law-enforcement policies, and the "training, supervision, hiring, or firing of the sheriff's employees." *Sumter County*, 953 So. 2d at 1238; *see McMillian*, 520 U.S. at 793; *Turquitt*, 137 F.3d at 1292 ("Alabama sheriffs are not county policymakers in their daily management of county jails.").

Brown's argument that Sheriff Smith was acting as a municipal policymaker for Walker County therefore fails.  Walker County's authority is limited to funding

8

the jail and providing the facilities to house the jail. *See* Ala. Code § 11-14-10. Brown does not allege that Sheriff Smith was acting as a policymaker in either of those areas when he interfered with Brown's employment, so the court has no reason to conclude that Sheriff Smith was acting on behalf of Walker County and not the State of Alabama in this context. The Eleventh Amendment therefore immunizes Sheriff Smith from all claims against him in his official capacity.

## B.  Individual Capacity Claims

All three defendants argue that they enjoy State immunity under Article I, Section 14 of the Alabama Constitution, and therefore are immune from Brown's state-law claims brought against them in their individual capacities. *See* Doc. 7 at 3–5; Doc. 14 at 3–5. Specifically, Smith claims he, as the sheriff, has "absolute immunity from lawsuits when 'acting within the line and scope of [his] employment.'" Doc. 14 at 3 (citing *Sumter County*, 953 So. 2d at 1239). Similarly, Carpenter and White claim that they are deputy sheriffs who enjoy the same absolute State immunity afforded to sheriffs under Section 14. Doc. 7 at 3–5. Brown, in part, argues in her response that Carpenter and White are jail employees who should only be afforded the immunity applicable to jailers under Alabama Code § 14-6-1.[2]

---

[2] Carpenter and White attach an affidavit to their motion that purports to establish their roles as deputy sheriffs and not as jail employees. *See* Doc. 7-1. Because this is a facial attack, however, the court will not consider this affidavit. *See Lawrence*, 919 F.2d at 1529. Regardless, the question whether Carpenter and White are deputies or jail employees is not dispositive of their motion to dismiss because, for the reasons set out below, they are not entitled to the immunity afforded to either position.

9

Doc. 17 at 7–11.

At the outset, the court notes that the "burden to establish an immunity defense rests with the Defendants." *Almond v. Randolph County, Ala.*, 2020 WL 3052223, at *5 (M.D. Ala. June 8, 2020); *Lockhart v. Franklin*, 777 F. App'x 387, 391 (11th Cir. 2019) (citing *Hickman v. Dothan City Bd. of Educ.*, 421 So. 2d 1257, 1259 (Ala. 1982)). The court finds that Smith, Carpenter, and White have not met that burden here.

### 1.   *State Immunity*

Smith, Carpenter, and White argue that Article I, Section 14 of the Alabama Constitution immunizes them from state-law claims for money damages in their individual capacities. Doc. 14 at 3–5. Section 14 states "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. It thereby "provides 'immunity to state officials sued in both their official and individual capacities,'" because a suit against a state official is generally viewed as an action against the state. *Flood v. Ala. Dept. of Ind. Rel.*, 948 F. Supp. 1535, 1549 (M.D. Ala. 1996) (quoting *Tinney v. Shores*, 77 F.3d 378, 383 n.3 (11th Cir. 1996)); *LeFrere v. Quezada*, 582 F.3d 1260, 1265 (11th Cir. 2009). And State immunity extends to sheriffs and their deputies when they are acting "within the line and scope of their employment." *Ex parte Purvis*, 689 So. 2d 794, 795 (Ala. 1996); *see Hight v. Smith*, 2022 WL 17178660, at *4 (N.D. Ala. Nov. 23, 2022); *LeFrere*, 582 F.3d

at 1265–66; *see also Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994) ("[D]eputy sheriffs are immune from suit to the same extent as sheriffs.").

At the motion to dismiss stage, "the [c]ourt cannot simply accept that . . . sheriffs and deputy sheriffs were acting within the scope of their employment." *Almond*, 2020 WL 3052223, at *5; *Ex parte Haralson*, 853 So. 2d 928, 933 (Ala. 2003) ("We cannot conclude, at this early stage of the proceedings, without evidence showing that at the time of the accident he was acting within the line and scope of his employment, that [the sheriff's deputy] is entitled to immunity."). "The mere fact that a tort occurs while a sheriff is on duty . . . does not automatically raise immunity's shield." *Almond*, 2020 WL 3052223, at *5; *Haralson*, 853 So. 2d at 933 ("No State officer, such as a deputy sheriff, can avoid tort liability simply by claiming that his 'mere status as a [S]tate official cloaks him with the [S]tate's constitutional immunity.'") (alteration in original) (quoting *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989)).

For this reason, a sheriff or deputy asserting an immunity defense must provide more than "bare conclusory assertions" that he was acting within the scope of his employment. *Lockhart*, 777 F. App'x at 391 (affirming the denial of State immunity where sheriff provided no facts, evidence, or legal authority supporting her claim that she acted within the scope of her employment); *Assoc. of County Comms. of Ala. Liab. Self-Insured Fund v. Robinson*, 777 F. App'x 397, 399–400

(11th Cir. 2019) (affirming dismissal where deputies "did not provide any evidence or legal authority establishing that the alleged conduct was within the scope of their duties and authority"); *Cooper v. Smith*, 2013 WL 252382, at *2 (M.D. Ala. Jan 23, 2013) (denying state immunity to deputy sheriffs who cited portions of the Alabama Code and stated that their alleged tortious conduct occurred while performing those statutory duties but did not submit any evidence in support of this contention); *Haralson*, 853 So. 2d at 933 (denying State immunity because it was conceivable plaintiff could prove facts showing that the deputy "was on a personal errand or otherwise had departed from the line and scope of his employment" at the time of the tortious conduct, and defendant offered no evidence to foreclose this possibility); *Almond*, 2020 WL 3052223, at *6 ("[T]he Court cannot accept the [sheriff and deputy's] general statements that conclude, but do not evince, that they acted within the scope of their duties.").

Here, Smith, Carpenter, and White argue that they are entitled to State immunity because this case ultimately "involves the Sheriff's function to run the day to day operations of the jail and who can enter the jail."[3] Doc. 7 at 4; Doc. 14 at 4. Smith and his deputies therefore maintain that they were acting in the scope of their employment when they advocated for Brown's termination. Doc. 7 at 4; Doc. 14 at

---

[3] While Smith filed a motion to dismiss separate from Carpenter and White's, the arguments in support of state immunity in the motions and reply briefs are virtually identical. *See* Docs. 7, 14, 18 & 20. The court therefore analyzes these arguments simultaneously.

4; *see* Doc. 1 at 4–6. But the defendants provide no factual support or evidence for this conclusory assertion. *See* Docs. 7, 14, 18 & 20. They merely cite to Alabama Code § 14-6-1, which states that "[t]he sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto." Doc. 7 at 4; Doc. 14 at 4. It therefore remains conceivable at this stage in the proceedings that Brown could prove that the defendants' actions were personally motivated or outside the line and scope of their employment. *See Haralson*, 853 So. 2d at 933. Thus, even assuming that Carpenter and White are deputy sheriffs, the defendants have not met their burden to show they are entitled to state immunity.

In addition, even if the defendants had adequately asserted an immunity defense, they incorrectly claim that State immunity for sheriffs and their deputies is without exception.[4] Doc. 7 at 3–4; Doc. 14 at 3–4. It is true that "[t]he wall of immunity erected by § 14 is nearly impregnable." *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002). But in *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013), the Supreme Court of Alabama recognized six types of exceptions[5] to actions

---

[4] In the defendants' motions to dismiss, they assert that "[a]ll courts reviewing this issue have unanimously ruled that absolute immunity bars state-based tort claims against Alabama county sheriffs." Doc. 7 at 4; Doc. 14 at 4. In their reply briefs, however, they take a contradictory position and recognize that since at least 1987, the courts have applied, at a minimum, five exceptions to state immunity. Doc. 18 at 5; Doc. 20 at 5.

[5] While courts often refer to these six judicially created categories of actions as "exceptions," that term is a misnomer. *Hight v. Smith*, 2024 WL 3243465, at *9 n.8 (N.D. Ala. June 28, 2024). "[I]n actuality[,] these actions are simply not considered to be actions 'against the state for § 14 purposes.'" *Moulton*, 116 So. 3d at 119.

13

where State immunity may otherwise apply. The first five exceptions are not relevant here, but the sixth permits "actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State." *Moulton*, 116 So. 3d at 1141 (internal quotation marks and citation omitted) (restating the five well-known exceptions and recognizing the sixth); *Hight v. Smith*, 2022 WL 17178660, at *4. Since deciding *Moulton*, the Alabama Supreme Court has assumed the sixth exception applies to sheriffs. *See Birmingham Br. (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148, 1159–60 (Ala. 2020) (applying the sixth exception to a sheriff but dismissing the claims because the plaintiff did not show that the sheriff had acted under a mistaken interpretation of the law); *see also Hight*, 2022 WL 17178660, at *4 (finding that a sheriff and his deputy did not demonstrate they were entitled to State immunity because they did not address the sixth exception's applicability to plaintiff's claims against them).

The defendants argue that the sixth exception to State immunity does not apply to sheriffs or deputy sheriffs because a "suit against a sheriff is essentially a suit against the state." *King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993); *see* Doc. 18 at 5–7; Doc. 20 at 5–7. In support of their argument, they rely on four Alabama Supreme Court decisions that did not address the sixth exception to State

14

immunity in suits against sheriffs. *See* Doc. 18 at 6–7; Doc. 20 at 6–7. Each of these cases predates *Moulton*, [6] and current Alabama case law does not support the defendants' position. *See Birmingham Br. (WVTM-TV) LLC*, 303 So. 3d at 1159–60. Therefore, even if the defendants had met their initial burden of proving their entitlement to State immunity, they have not given the court reason to conclude that the exception recognized in *Moulton* does not apply here.

In sum, Smith, Carpenter and White do not establish they are entitled to State immunity. Even if they did, they have not demonstrated that an exception to immunity would not cover Brown's claims.

### 2. *Jailer Immunity*

Similarly, as Brown points out, Carpenter and White have not established that they enjoy jailer immunity even if they are employees of the Walker County Jail and not deputy sheriffs. *See* Doc. 17 at 7–10. The Alabama Jailer Act provides immunity for those who are employed by a sheriff to "operate the jail and supervise the inmates housed therein." Ala. Code § 14-6-1; *see Bozeman v. County of Elmore*, 2021 WL 2954004, at *6 (M.D. Ala. July 14, 2021); *York v. Williams*, 2023 WL 7927762, at *17 (N.D. Ala. Nov. 16, 2023). It "entitle[s] jailers to the same immunity enjoyed

---

[6] These cases, in reverse chronological order, are *Ex parte Davis*, 930 So. 2d 497, 499 (Ala. 2005); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004); *King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993); and *Parker v. Amerson*, 519 So. 2d 442, 446 (Ala. 1987). *See* Doc. 18 at 6–7; Doc. 20 at 6–7. *Moulton*, which recognized the sixth exception to immunity, *see Archie*, 2021 WL 1182370, at *3, was decided in 2013. The defendants do not point to any cases decided after *Moulton* that support their position in their briefs. *See* Docs. 7, 14, 18 & 20.

by sheriffs and deputies, provided the jailers are acting within the line and scope of their duties and in compliance with the law." *York*, 2023 WL 7927762, at *17. While "[t]he Alabama Supreme Court has not interpreted the phrase 'in compliance with the law,'" *id.* at *18, the "Eleventh Circuit has held that § 14-6-1 does not 'immunize [defendants] from liability under state law if they violated [a plaintiff's] constitutional rights.'" *Id.* (alteration in original) (quoting *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019)).

As explained above, Carpenter and White do not provide any support for their claim that they were acting within the line and scope of their employment when they contacted Bales, threatened Brown's employment, or blocked inmates from calling Brown. *See* Doc. 1 at 4–6; *see also* Docs. 7 & 18. And even if they did, the existence of an actionable First Amendment claim against them undermines any argument that they were acting in compliance with the law. *See* Docs. 6 & 7; *see also Bozeman*, 2021 WL 2954004, at *6 (denying a jailer immunity from state-law claims because he did not move to dismiss the federal constitutional claim asserted for the same or similar conduct and explaining that "a plausible allegation of a violation of federal constitutional law means that there is also a plausible allegation that [the jailer] was not acting in compliance with the law for purposes of immunity"). Therefore, regardless of whether Carpenter and White are properly classified as deputies or jailers, they are not immune from Brown's claims.

Because Smith, Carpenter, and White have not shown their immunity from suit, their motions to dismiss Brown's individual-capacity state-law claims are denied. Of course, the defendants may assert an immunity defense at the summary judgment stage. *See Robinson*, 777 F. App'x at 400 ("If [the deputy defendants] believe, after a period of discovery, that the evidence establishes their entitlement to state-law immunity, they may seek summary judgment on this defense.").

## IV. CONCLUSION

For these reasons, it is ORDERED as follows:

1. Sheriff Smith's Partial Motion to Dismiss (Doc. 13) is GRANTED in part and DENIED in part, and all claims against Sheriff Smith in his official capacity are DISMISSED with prejudice.

2. Carpenter and White's Partial Motion to Dismiss (Doc. 6) is DENIED.

DONE and ORDERED on February 7, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE